UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, as successor in interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY f/k/a NORTHBROOK INSURANCE COMPANY, | ) ) ) ) ) | RECEIVED COPY SEPTEMBER 3 , 2008 08CV5033 JUDGE KENNELLY MAGISTRATE JUDGE BROWN NF |
| Petitioner, | ) ) | |
| v. | ) ) | Case No. |
| SENTRY INSURANCE A MUTUAL COMPANY | ) ) | |
| Respondent. | ) | |

### ALLSTATE INSURANCE COMPANY'S
### MEMORANDUM OF LAW IN SUPPORT OF PETITION IN AID OF ARBITRATION

The Petitioner, ALLSTATE INSURANCE COMPANY as successor in interest to

NORTHBROOK EXCESS and SURPLUS INSURANCE COMPANY f/k/a NORTHBROOK

INSURANCE COMPANY ("Allstate"), submits this Memorandum of Law in support of its Petition

in Aid of Arbitration. For the reasons stated herein, Petitioner requests that this Court exercise its

authority to select an umpire or, in the alternative, enter an order compelling Respondent, SENTRY

INSURANCE A MUTUAL COMPANY ("Sentry") to engage in the arbitral process pursuant to the

terms of the arbitration clause set forth in a reinsurance treaty entered between them.

### I.     INTRODUCTION

This proceeding under the Federal Arbitration Act 9 U.S.C. §§ 1 *et seq.* concerns the

employment of the process set forth in the arbitration clause for the selection of a third arbitrator,

also known as an umpire. Sentry, the Reinsurer in this matter, simply refuses to engage in the

arbitral process pursuant to the terms of the provision as written.

The arbitration clause contained in Cession 125 places the selection process in the hands of

the two party-appointed arbitrators. *See* Petition, ¶4. The clause does not set out a specific

procedure for that process but it does contain a deadline that the selection is to occur "within 30 days of their appointment," meaning the appointment of the party arbitrators

In an effort to conform to the intent of the clause, the parties attempted to reach a mutual agreement on a process whereby each side would choose a slate of candidates and submit questionnaires prior to selection to determine if there was any bias or partiality which would preclude an individual from serving as an umpire in the case. However, the parties became deadlocked over the wording of the questionnaire due to Sentry's insistence that it be allowed to inquire about the potential third arbitrator's views and opinions on the issue of set-off [1] Since the parties could not mutually agree to modify the terms of the umpire selection clause, they have no alternative but to revert to the terms of the treaty arbitration clause to complete the selection process. However, Sentry refuses to do so.

With the parties at an impasse, Allstate petitions this Court to exercise its authority under 9 U.S.C. § 5 to designate and appoint an umpire for the panel set to hear the dispute concerning Cession 125. In the alternative, Allstate petitions this Court pursuant to 9 U.S.C. §4 for an Order compelling Sentry to proceed in accordance with the method of naming the third arbitrator as provided in Cession 125 and for an Order compelling Sentry to submit its case to its arbitrator within 30 days of the appointment of the third arbitrator pursuant to the arbitration clause.

## II.    STATEMENT OF FACTS

There are no material facts in dispute   Allstate demanded arbitration against Sentry on March 27, 2008. Novak Decl., ¶4, Exhibit B   Thereafter, the parties appointed their respective arbitrators on April 25 and May 5, 2008. Novak Decl., ¶5   Sentry refused to consolidate the multiple

---

[1] Sentry maintains that it is entitled to set off certain amounts it claims are due from Allstate under other reinsurance contracts not at issue in this dispute   For multiple reasons which Allstate can articulate if relevant and necessary, Allstate has opposed, and continues to oppose, any attempt to discuss specific issues with a potential third arbitrator under the guise of seeking to determine whether he or she has a bias or prejudice in favor or against the defense of set-off   Seeking an umpire's view of an ultimate issue prior to selection is akin to seeking an advisory opinion from a Court, and is simply inappropriate

contracts on which Allstate demanded arbitration and, therefore, Allstate notified Sentry that it would proceed to arbitrate the dispute under Cession 125 only. Novak Decl., ¶6.

Thereafter, the parties attempted to reach a mutual agreement to modify the terms of the arbitration clause by creating an umpire selection process that supplemented the one contained in the arbitration clause. Part of the negotiations involved developing the language of a questionnaire to submit to potential umpire candidates. Ultimately, the parties could not agree on the wording of the questionnaire and the process broke down at that point. Novak Decl., ¶¶8, 9. Allstate, therefore, has no alternative but to seek this Court's assistance in resolving the lapse so that the arbitration may proceed.

### III.    ARGUMENT

#### A.    The Court has the authority to appoint an umpire under these circumstances.

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* specifically permits a court to resolve an impasse or to order compliance with the terms of an arbitration clause. Section 5 of the Act states:

> If in the Agreement, provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court may designate an appointed arbitrator or arbitrators or umpire as the case may require who shall act under the said Agreement with the same force and effect as if he or they had been specifically named therein.

The FAA thus contemplates that the parties will first resort to the procedure set forth in the arbitration clause for the appointment of an umpire, and 9 U.S.C. §5 specifically requires that the method for selecting an arbitrator or an umpire set forth in the arbitration clause "shall be followed." Notwithstanding the parties' extracontractual efforts to agree to a selection process, the fact is they could not accomplish the task and the only alternative is to revert to the terms of the arbitration clause.

Under the terms of Cession 125's arbitration clause, the party-appointed arbitrators are to choose the umpire. Thus, Sentry is obligated to have its arbitrator participate in this process and reach an agreement with Allstate's arbitrator on the designation of an umpire or "draw lots" to complete the process if an agreement is not reached. Sentry's refusal to direct its arbitrator to proceed in accordance with the terms of the arbitration clause in Cession 125 is, therefore, contrary to the terms of the contract. In such an event, the FAA establishes that, in the event of a "lapse" and upon the petition of one of the contracting parties, the Court can step in and either appoint an umpire itself or else order the parties to comply with the umpire selection procedure contained in the arbitration agreement.

There is no doubt that the parties in this case have reached an impasse and thus there is a "lapse" in the appointment of the third arbitrator. The meaning of the term "lapse" in 9 U.S.C. § 5 has been interpreted as "the passage of time regardless of the intent of the parties." * * * "Thus, 'for any other reason there is a lapse,' means that even if the parties have availed themselves of the prescribed method, they have been unsuccessful in appointing an arbitrator for some period of time." *Wisconsin v. Ho-Chunk Nation,* 402 F. Supp.2d 1008, 1011 (D. Wis. 2005) *quoting Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.,* 814 F.2d 1324, 1327 (9th Cir. 1987). A "lapse" can also mean "some other mechanical breakdown in the arbitration selection process." *Gutfreund v. Weiner,* 68 F.3d 554, 560 (2nd Cir. 1995).

The cases under 9 U.S.C. § 5 do not set forth the amount of time that would constitute a "lapse." Such questions, therefore, should be evaluated under the circumstances presented in each case. For example, in *Ho-Chunk Nation, supra,* the lapse was six months from the demand. In *Pacific Reinsurance, supra,* the lapse was five months. In the case *sub judice,* the lapse between the demand for arbitration (March 27, 2008) and the filing of Allstate's petition (September 3, 2008) has been over five months. Given the lapse of time and the irreconcilability of the parties' positions, it is

clear that the only way to break the deadlock is for the Court to step in and exercise its authority under 9 U.S.C. §5 to appoint an umpire.

If the Court opts to appoint an umpire, it should do so from among the candidates that are best qualified to serve in the position. In *Travelers Indem. Co. v. Everest Reinsurance Co.*, 2004 U.S. Dist. LEXIS 30074 (D. Conn. Oct. 8, 2004), for instance, the arbitration agreement between Travelers and Everest Re was, in many respects, similar to the arbitration clause between Allstate and Sentry. The parties chose their party-appointed arbitrators, but were unable to agree upon an umpire. Upon petition pursuant to 9 U.S.C. §5, the District Court declared that the parties were at an impasse because of their inability to agree on an umpire. It then considered the "qualities and characteristics desirable in an umpire for this type of reinsurance arbitration." The Court first noted that the arbitration clause itself required the umpire to have a certain level of expertise in the reinsurance industry. The Court further held that, under general arbitration law principles, an umpire should be both impartial and have the ability to "manage the arbitration process in an organized, efficient, and fair manner." *Id.*, at *9.

Allstate fully agrees with the criteria set forth in the *Travelers* case, and it stands ready to submit to the Court upon request the names of umpire candidates who fulfill both the requirements of impartiality and expertise set forth in that case as well as the professional requirements set forth in the arbitration clause.

**B.      The Court has authority to compel Sentry to proceed in accordance with the arbitration clause.**

In the alternative to selecting the umpire, the Court could order the parties pursuant to 9 U.S.C. §4 to proceed with umpire selection in accordance with the arbitration clause. There is nothing preventing Sentry from directing its arbitrator to proceed with the appointment of an umpire in the subject arbitration except for its own recalcitrance. The arbitration clause in Cession 125 contains an adequate procedure for choosing an umpire, and Allstate has urged Sentry to follow it.

Allstate, therefore, should not be forced to petition this Court to intervene in the matter. In the event the Court is not inclined to appoint an umpire, it should issue an Order compelling Sentry to fulfill its obligations under the contract and proceed with the naming of the umpire pursuant to the Treaty terms.

On its face, the arbitration clause in Cession 125 provides scant direction regarding how the "third arbitrator" is to be selected, but it provides sufficient direction: it is left to the two arbitrators to determine. If they cannot agree on the selection of a third arbitrator, ". . . each of them shall name two, of whom the other shall decline one and the decision shall be made by drawing lots." Thus, even if the party-appointed arbitrators are unable to reach consensus, the clause provides the methodology for the tie-breaker.

The FAA "provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) *quoting* 9 U.S.C. §2. Contractual provisions for the appointment of arbitrators "shall be followed." 9 U.S.C. § 5. *Universal Reinsurance Corp. v. Allstate Insurance Co.*, 16 F.3d 125, 128 (7th Cir. 1994). Under the FAA, Federal Courts must interpret arbitration agreements as they would any other private agreements – according to their terms. *Mastrobuono v. Shearson Lehman Hutton, Inc,* 514 U.S. 52, 115 S.Ct. 1212, 1214, 131 L.Ed.2d 76 (1995).

When one of the parties to the arbitration agreement refuses to arbitrate pursuant to the terms of that agreement, the aggrieved party may petition the Court for "an order directing that such arbitration proceed in the manner provided for in such an agreement." 9 U.S.C. §4. A petition under §4 can be filed in cases where a dispute arises out of a party's refusal to proceed with an incomplete arbitration panel. *See, e.g., Blue Cross Blue Shield of Tennessee v. BCS Ins. Co.*, 517 F. Supp. 2d 1050 (N.D. Ill. 2007). In that case, the Court held that "courts should compel arbitration if there is:

(1) a written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate." *Id.*, at 1055, *citing Zurich Am. Ins. Co. v. Watts Indus.* 417 F.3d 682, 687 (7th Cir. 2005).

The arbitration agreement, therefore, can and should be enforced as written, and Sentry's refusal to proceed with the arbitration, in light of its clear obligations under the contract, is inexcusable. Sentry should, therefore, be compelled to proceed with the arbitration process, as outlined in Cession 125, and direct its arbitrator to choose an umpire following discussions with Allstate's arbitrator.

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant Allstate's Petition in Aid of Arbitration and exercise its authority under 9 U.S.C. §5 to appoint an arbitrator for the arbitration between Allstate and Sentry in connection with the dispute regarding Cession 125. In the alternative, the Court should order Sentry, pursuant to 9 U.S.C. §4, to proceed with the arbitration in conformity with the provisions of the arbitration agreement. In addition, the Court should order such other relief that may be appropriate.

Dated:  September 3, 2008.

ALLSTATE INSURANCE COMPANY,
as successor in interest to NORTHBROOK
EXCESS AND SURPLUS INSURANCE
COMPANY formerly known as NORTHBROOK
INSURANCE COMPANY

By:  _____
        /s/ Neal R. Novak
        One of its Attorneys

**NOVAK LAW OFFICES**
Neal R. Novak, Esq. (#06181620)
Reid J. Rozen, Esq. (#6199084)
33 N. LaSalle Street, Suite 1900
Chicago, Illinois 60602
(312) 425-2500 Telephone
(312) 425-2525 Facsimile